J-S59033-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANCISCO JACKSON | : | |
| | : | |
| Appellant | : | No. 1004 EDA 2018 |

Appeal from the Judgment of Sentence March 9, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0010562-2016

BEFORE:  LAZARUS, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED FEBRUARY 26, 2020**

Francisco Jackson appeals from the judgment of sentence entered following the revocation of his probation. His counsel filed an **Anders**[1] brief and a petition to withdraw as counsel. We affirm the judgment of sentence and grant counsel's petition to withdraw.

In May 2016, Jackson entered a negotiated guilty plea to one count of possession with intent to distribute ("PWID") Xanax and Naloxone.[2] Colloquy

---

[1] **Anders v. California**, 386 U.S. 738 (1967).

[2] "Naloxone is an opioid antagonist that is used to temporarily reverse the effects of an opioid overdose, namely slowed or stopped breathing." U.S. Surgeon General's Advisory on Naloxone and Opioid Overdose, available at https://www.hhs.gov/surgeongeneral/priorities/opioids-and-addiction/naloxone-advisory/index.html (last visited Dec. 19, 2019).

for Plea of Guilty, filed May 2, 2017.[3] The following facts were set forth at the

guilty plea hearing:

> On October 6, 2016, Officer John Moison from the narcotics field unit went to the area of 2312 North Bouvier Street here in Philadelphia armed with a confidential informant.
>
> That confidential informant went to the location--to that location. At said location, interacted with the defendant and engaged in hand-to-hand transaction and returned----and turned over four Xanax pills along with cellophane containing blue and white paper of Suboxone. Those were placed on a property receipt.
>
> So at some point later that day between the hours of 3:00 and 5:00, Officer Moison went back to that location with the same confidential informant. That confidential informant again met with the defendant, purchased 8 Xanax pills at that point, returned them, and those were placed on a property receipt.
>
> The very next day on October 7th, Officer Moison went to that location with backup from the field unit. Officer Moison called the defendant directly on a number that was provided to the confidential informant. Officer Moison set up a drug transaction with the defendant, the defendant exited that property and was stopped by Officer Cruz. Recovered from him was an amber pill bottle with 16 Xanax pills, as well as 2 Oxycontin pills and $97.
>
> Officers conducted a search warrant on that location. They recovered $21 in addition to the $97 that was already recovered. As well as three more of the Suboxone strips that were recovered underneath a mattress. All the drugs matched from both days. All the drugs did test positive for controlled substances.

---

[3] The Written Colloquy for Plea stated he was pleading guilty to PWID for Xanax and Naloxone, and the maximum for the plea was "3YRP." Colloquy for Plea of Guilty at 1. He agreed that his lawyer told him the elements of the crimes charged and that he could go to jail for ten years if convicted. *Id.* at 2.

N.T., 5/2/17, at 15-16.

At the sentencing, the Assistant District Attorney stated Jackson pled guilty to PWID of Xanax, and explained the guideline range was 12 to 18 months:

> **[ASSISTANT DISTRICT ATTORNEY]**: He pled, Your Honor, to the Xanax and Naloxone. Xanax is a five, not a seven.
>
> **THE COURT**: So five, five?
>
> **[ASSISTANT DISTRICT ATTORNEY]**: Right. So his guidelines would be 12 to 18, plus or minus 12.
>
> **THE COURT**: Okay.

N.T., 6/2/17, at 3. The trial court imposed a negotiated sentence of three years' probation.

Jackson never reported to probation. N.T., 3/9/18, at 4. In March 2018, the trial court revoked Jackson's probation. At the probation revocation hearing, Jackson's counsel explained that Jackson's mother was ill, and he did not report for fear of being incarcerated and not being able to be with his mother. N.T., 3/9/18, at 6. Counsel explained that Jackson was working under the table for a company that cleans and guts houses to support his seven children. *Id.* Jackson also spoke, asking that the court give him another chance. *Id.* at 7.

When discussing the sentence, defense counsel stated, "[B]ecause its Xanax PWID, the max is three years['] incarceration." *Id.* at 9. The assistant district attorney ("ADA") stated there had been a prior PWID conviction, which

would increase the maximum sentence. *Id.* The ADA did not dispute the characterization of the narcotic involved.

In imposing sentence, the court stated:

> Mr. Jackson, unfortunately when you just completely ignore your sentence you really just don't get the same sentence all over again. That's not how it works.
>
> So you've been around the block plenty. Your prior record score is a five, you got a very sweet deal here. Your guideline range was for 12 to 18 months on this drug case. I gave you three years of probation and you don't even show up. So honestly, Mr. Jackson, you don't just get to ignore a Judge's sentence and then expect that you're – there'll be no consequence to that. I'm sure you have good reasons, I'm sorry about your mother's illness.

*Id.* at 8. The court sentenced Jackson to six to 12 months' incarceration followed by three years' probation. Jackson filed a timely notice of appeal.

As mentioned above, counsel filed an *Anders* brief and a petition to withdraw.

Before we address the merits of Jackson's appeal, we must first address counsel's request to withdraw from representation. *See Commonwealth v. Goodwin*, 928 A.2d 287, 290 (Pa.Super. 2007) (*en banc*). An *Anders* brief that accompanies a request to withdraw must:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009). Counsel must also provide a copy of the *Anders* brief to the appellant, and a letter that advises the appellant of the right to: "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the *Anders* brief." *Commonwealth v. Orellana*, 86 A.3d 877, 880 (Pa.Super. 2014) (quoting *Commonwealth v. Nischan*, 928 A.2d 349, 353 (Pa.Super. 2007)). If we determine that counsel has satisfied these requirements, we then conduct "a full examination" of the record "to decide whether the case is wholly frivolous." *Commonwealth v. Dempsey*, 187 A.3d 266, 271 (Pa.Super. 2018) (*en banc*) (quoting *Anders*, 386 U.S. at 744).

Here, counsel provided a factual and procedural history, with citations to the record, and referred to things in the record that might arguably support the appeal. He also set forth his conclusion that the appeal was wholly frivolous and his reasons for concluding the appeal is frivolous, with citations to the record and case law. Further, counsel sent a copy of the *Anders* brief and petition to withdraw to Jackson and informed him of his right to proceed *pro se* or with retained counsel. We thus conclude counsel has complied with the technical requirements of *Anders*.

We will now address the issues raised in the *Anders* brief:

> 1. Did the [trial] court err in finding that [Jackson] violated his probation, thereby justifying the imposition of a new sentence of incarceration?
>
> 2. Was [Jackson's] sentence legal?

***Anders*** Br. at 3.

We review a judgment of sentence imposed following the revocation of probation to determine "the validity of the probation revocation proceedings and the authority of the sentencing court to consider the same sentencing alternatives that it had at the time of the initial sentencing." ***Commonwealth v. MacGregor***, 912 A.2d 315, 317 (Pa.Super. 2006) (quoting ***Commonwealth v. Fish***, 752 A.2d 921, 923 (Pa.Super. 2000)).

A trial court may revoke probation "only 'upon proof of the violation of specified conditions of the probation.'" ***Commonwealth v. Foster***, 214 A.3d 1240, 1250 (Pa. 2019) (quoting 42 Pa.C.S.A. § 9771(b)) (emphasis deleted). If the court revokes a defendant's probation, "it may only resentence the defendant to a term of incarceration if (1) the defendant was convicted of a new crime; (2) the defendant's conduct makes it likely that he or she will commit a new crime if not incarcerated; or (3) incarceration 'is essential to vindicate the authority of the court.'" ***Id.*** (quoting 42 Pa.C.S.A. § 9771(c)).

Here, a condition of Jackson's probation was that he report to his probation officer. The trial court found that Jackson violated his probation when he failed to report to probation following his sentencing. Therefore, the court revoked his probation. Jackson has never claimed that he in fact

reported. Because Jackson violated a specific condition of his probation, any challenge to the revocation would be frivolous.

Further, any challenge to the court's imposition of a term of incarceration would be frivolous, as the court's statements on the record show the court imposed the sentence to vindicate the authority of the court. After receiving a sentence of probation, Jackson failed to report to his probation officer. As the court noted "when you just completely ignore your sentence you really just don't get the same sentence all over again." N.T., 3/9/18, at 8.

The next issue raised in the **Anders** brief is whether the court imposed an illegal sentence. "[U]pon sentencing following a revocation of probation, the trial court is limited only by the maximum sentence that it could have imposed originally at the time of the probationary sentence." **MacGregor**, 912 A.2d at 317 (quoting **Fish**, 752 A.2d at 923).

A person convicted of PWID of a "controlled substance or counterfeit substance classified in Schedule I or II which is a narcotic drug" can be sentenced to a maximum sentence of 15 years' imprisonment." 15 P.S. § 780-113(f)(1) (footnote omitted). A person convicted of PWID, where the controlled substance is "[a]ny other controlled substance or counterfeit substance classified in Schedule I, II, or III," faces a maximum sentence of five years' imprisonment. 35 P.S. § 780-113(f)(2). Where the controlled substance involved in a PWID conviction is "a controlled substance or counterfeit substance classified in Schedule IV," the maximum sentence is

three years' imprisonment. 35 P.S. § 780-113(f)(3). Further, "[a]ny person convicted of a second or subsequent offense under clause (30) of subsection (a) of section 13 of this act . . . may be imprisoned for a term up to twice the term otherwise authorized." 35 P.S. § 780-115(a) (footnote omitted).

The Commonwealth claims that the narcotics at issue were Xanax, Oxycodone and Suboxone. The Information charged Jackson with drug charges related to Xanax,[4] Oxycodone, and "Buprenorphine and Naloxone," also known as Suboxone.[5] Xanax and Naloxone were the substances written on the guilty plea and, at the sentencing hearing, the Commonwealth and the court discussed that the controlled substance at issue was Xanax. In addition, at the sentencing for the probation violation, defense counsel stated, without objection, that the narcotic involved was Xanax. We conclude that the only substances Jackson pled guilty to possessing were Xanax and Naloxone.

Xanax is a schedule IV controlled substance. Naloxone is not listed as a controlled substance. If this were Jackson's first offense, the maximum term of imprisonment would be three years. 35 P.S. § 780-113(f)(3). However, Jackson has at least one other conviction for PWID. ***See Commonwealth v.***

---

[4] The Information listed "Alprazolam." Alprazolam is the generic name for Xanax. Drugs.com, available at https://www.drugs.com/alprazolam.html (last visited Jan. 14, 2020).

[5] Although Suboxone contains Naloxone, they are not the same substance. Suboxone contains Buprenorphine and Naloxone and is used for the treatment of opiate addictions. Highlights of Prescribing Information, available at https://www.accessdata.fda.gov/drugsatfda_docs/label/2018/020733s022lbl .pdf (last visited Jan. 22, 2020). It is a Schedule III Narcotic. ***Id.***

**Jackson**, No. CP-51-CR-1106771-1998. Therefore the maximum sentence is six years' imprisonment. 35 P.S. § 780-115(a). Accordingly, any claim that the sentence of six to 12 months' imprisonment followed by 3 years' probation is illegal is frivolous.

We thus agree with counsel that the issues identified in his **Anders** brief are wholly frivolous. Our independent review has revealed no non-frivolous issues. We therefore affirm the judgment of sentence and grant the petition to withdraw.

Judgment of sentence affirmed. Petition to withdraw granted.

Judge Lazarus joins the Memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/26/20